**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMIE C.,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Civil Action No. 25-46 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Jamie C.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Plaintiff's request for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons below, the Court affirms the Commissioner's decision.

I.  **BACKGROUND**

In this appeal, the Court must consider whether the Administrative Law Judge's (the "ALJ") finding that Plaintiff was not disabled is supported by substantial evidence. The Court begins with the procedural posture and decision by the ALJ.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

### A. Procedural Background

Plaintiff filed an application for DIB in July 2017, alleging a disability onset date of June 16, 2011, and last insured date of March 31, 2019. (AR 19, 421-22, 548, ECF No. 4.[2]) The Social Security Administration (the "Administration") denied the application both initially and upon reconsideration. (*Id.* at 250-58.) Thereafter, Plaintiff requested a hearing (*id.* at 265-66), and the ALJ held a telephone hearing on November 5, 2020 (*id.* at 125-65). On March 24, 2021, the ALJ denied Plaintiff's claim. (*Id.* at 220-34.) Plaintiff appealed that decision, and the Appeals Council subsequently granted review and remanded the case. (*Id.* at 245-47.) Following remand, hearings were held on June 7, 2022 (*see id.* at 84-124), and October 27, 2022 (*see id.* at 46-83). On August 30, 2023, the ALJ denied Plaintiff's claim again. (*Id.* at 17-45.) Plaintiff submitted a request for review, which the Appeals Council denied (*id.* at 1-6), making the ALJ's August 30, 2023, decision the Commissioner's final decision. This appeal followed. (*See generally* Compl., ECF No. 1.) On April 17, 2025, Plaintiff filed her moving brief in this action. (Pl.'s Moving Br., ECF No. 7.) The Commissioner opposed (Def.'s Opp'n Br., ECF No. 10), and Plaintiff replied (Pl.'s Reply Br., ECF No. 11).

### B. The ALJ's Decision

In her August 30, 2023, decision, the ALJ concluded that Plaintiff was not disabled at any time between June 16, 2011, and March 31, 2019. (AR 31.) The ALJ set forth the Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 18-19 (citing 20 C.F.R. § 404.1520(a)).) At step one, the ALJ found that Plaintiff did not "engage in substantial

---

[2] The Administrative Record ("AR") is located at ECF Nos. 4 through 4-29. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

gainful activity" during the period from her alleged onset date through the date last insured. (*Id.* at 19-20 (citing 20 C.F.R. § 404.1571).)

At step two, the ALJ found that Plaintiff suffered from several severe impairments: (1) acute disseminated encephalomyelitis ("ADEM"); (2) migrane headache disorder; (3) disorders of autonomic nervous system; (4) immune deficiency disorders, excluding HIV infection; (5) obesity; (6) trauma and stressor related disorders; (7) spine disorder; (8) anxiety and obsessive compulsive disorders; and (9) depressive, bipolar and related disorders. (*Id.* at 20 (citing 20 C.F.R. § 404.1520(c)).) The ALJ also found that Plaintiff's "diagnoses of visual disturbances, tinnitus, and GERD" were non-severe because "there is no medical evidence, either opinion or otherwise, contained within the record that indicates any significant limitation in the [Plaintiff's] mental and physical abilities to do one or more basis work activities based on these impairments." (*Id.*)

Despite the ALJ finding Plaintiff had severe impairments, she determined at step three that Plaintiff "did not have an impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 19-20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) The ALJ then found that Plaintiff possessed the residual functional capacity (the "RFC"):

> to perform sedentary work as defined in 20 C[.]F[.]R[.] [§] 404.1567(a) except she can lift and carry up to 10 [pounds] occasionally and less than 10 [pounds] frequently. She can stand and walk 2 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs, balance on wet moving or uneven surfaces, kneel, stoop, and crouch; but she cannot crawl, climb ladders, ropes, or scaffolds, or work around hazards, including moving mechanical parts or at unprotected heights. She can understand and execute simple and routine tasks; have incidental contact with the public but not with tasks that involve direct customer service; and make simple decisions and adapt to occasional changes in essential work tasks. [She] cannot

3

>have concentrated exposure to temperature extremes of heat and cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. [She] can work in environments with moderate noise levels. [She] will be off task 10% of the workday and absent once per month due to the impairments.

(*Id.* at 22.)

In determing Plaintiff had the RFC to "perform sedentary work" subject to certain limitations, the ALJ thoroughly examined Plaintiff's medical history, including medical records such as those from Dr. Steven Greco, Ph.D ("Dr. Greco") and Dr. Deepinder Arora ("Dr. Arora"), Plaintiff's subjective complaints, and the state agency consultants' shared opinions. (*See id.* at 23-29.) Although the state agency medical consultants opined that Plaintiff should be limited to "[l]ight exertion with occasional climbing of ladders, ropes and scaffolds and environmental restrictions, such as concentrative noise, due to migraines" and "simple, routine and low contact work[,]" the ALJ determined that the opinion was only "partially persuasive" because "any deference that might ordinarily be afforded these assessment[s] under Social Security Ruling (SSR) 17-2p is diminished by the fact that the consultants did not have the opportunity to examine [Plaintiff] or review the evidence received after their file review was complete." (*Id.* at 28.) Further, the ALJ considered "a cardiac residual functional capacity questionnaire dated October 16, 2020[,] . . . [that] indicates that [Plaintiff] ha[d] been treated since March 2020 for palpitations and hypertension which would frequently interfere with concentration." (*Id.*) The ALJ found, however, that the opinion was "unpersuasive because it [was] based on less than [twelve] months of a treating relationship" and noted that "there [was] insufficient explanation for such restrictive limitations based solely on symptoms of palpitations." (*Id.*)

At step four, the ALJ concluded that Plaintiff was "unable to perform any past relevant work." (*Id.* at 29 (citing 20 C.F.R. § 404.1565).) The ALJ considered that Plaintiff was 39 years old on the date last insured, which is defined as a "younger individual" and that she has at least a

4

high school education. (*Id.* at 29.) The ALJ determined that "[t]ransferability of job skills is not material . . . because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [she] has transferable job skills." (*Id.* at 30.) Based on the aforementioned factors and Plaintiff's RFC, the ALJ concluded at step five that "there were jobs that existed in significant numbers in the national economy" that Plaintiff could have performed. (*Id.* at 30-31 (citing 20 C.F.R. §§ 404.1569, 404.1569(a)).) In doing so, the ALJ relied upon the testimony of the vocational expert, who testified that an individual of Plaintiff's age, education, work experience, and RFC would have been "able to perform the requirements of representative occupations" such as document preparer, sorter, and addresser. (*Id.*) Based on the above findings, the ALJ concluded that Plaintiff had not been under a disability "at any time from June 16, 2011, the alleged onset date, through March 31, 2019, the date last insured[.]" (*Id.* at 31 (citing 20 C.F.R.§ 404.1520(g)).)

This appeal concerns the ALJ's step-two and step-three analysis pertaining to Plaintiff's conversion disorder and various arguments related to whether the ALJ's determinations are supported by substantial evidence. (*See generally* Pl.'s Moving Br.) Specifically, Plaintiff argues that the ALJ's failure to acknowledge her conversion disorder as "severe" was "plain error and not supported by substantial evidence in the record." (*Id.* at 21-23.) Plaintiff also argues that the ALJ: (1) determined "that Dr. Greco's pre-DLI findings were all normal [which] was a patent mistake of fact" (*id.* at 19-20); (2) did not properly evaluate ADEM or its impact on Plaintiff (*id.* at 23-25); (3) failed to consider "combined effects of impairments, side effects of medications, and aggravating factors" (*id.* at 25-26); (4) failed to properly evaluate the evidence from Dr. Greco (*id.* at 26-27); (5) discussed "many things which have tangential relevance to what's wrong with this Plaintiff" (*id.* at 27); (6) failed to consider Plaintiff's impairments in combination (*id.* at

5

27-28); and (7) failed to consider "the impact of ADEM (including it sequelae) and of conversion disorder on Plaintiff's ability to function," which all would have led the ALJ to conclude that Plaintiff was disabled (*id.* at 28-29). The Court must therefore resolve whether the ALJ's decision is supported by substantial evidence and adequately explained.

## II.    LEGAL STANDARD

### A.    Standard of Review

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting 42 U.S.C. § 405(g)); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (explaining that the reviewing court is "bound to the Commissioner's findings of fact if they are supported by substantial evidence"). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks and citation omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence.

*Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

      **B.**      **Establishing Disability**

To be eligible for insurance benefits, claimants must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). For the first step, the claimant must establish that she has not engaged in any substantial gainful activity since the onset of her alleged disability. 20 C.F.R. § 404.1520(a)(4)(i). For the second step, the claimant must establish that she suffers

7

from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bown v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The third step requires that the claimant provide evidence that her impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that she suffers from a listed impairment or that her severe impairment is equal to a listed impairment, she is presumed to be disabled and entitled to DIB. *Id.*; 20 C.F.R. § 404.1520(d). If she cannot so demonstrate, the eligibility analysis proceeds to step four. *See* 20 C.F.R. § 404.1520(e).

Under the fourth step, the ALJ determines whether the claimant's RFC permits her to resume her previous employment. *Id.* If claimant's RFC permits previous employment, she is not "disabled" and thus is not entitled to DIB. *Id.* § 404.1520(f). The burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with her medical impairments, age, education, past work experience, and RFC. 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this burden, the claimant will receive DIB. *Id.*

**III.   DISCUSSION**

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence. (*See generally* Pl.'s Moving Br.) Specifically, Plaintiff contends that the ALJ erred in failing to consider her conversion disorder at steps two and three, and raises other miscellaneous arguments pertaining to the evidence cited in the ALJ's decision. The Court addresses each argument below.

### A. Consideration of Plaintiff's Conversion Disorder

Plaintiff argues that the ALJ committed reversible error by not identifying conversion disorder at step two and then failing to evaluate the evidence of somatic disorders, including conversion disorder, at step three. The Court addresses each argument in turn.

#### *1. Conversion Disorder at Step Two*

Plaintiff argues that that the ALJ erred at step two of the analysis in failing to acknowledge conversion disorder as a "severe" impairment and subsequently failing to consider the impact of the conversion disorder, a somatic disorder, throughout the disability evaluation process. (Pl.'s Moving Br. 21-23.) The medical records do reflect that Plaintiff was diagnosed with conversion disorder (AR 1755), but the ALJ did not list conversion disorder as either a "severe" or "non-severe" impairment at step two (*id.* at 20).

"At step two, an ALJ is required to determine[:] (1) whether an impairment is medically determinable[;] and if so (2) whether that medically determinable impairment is severe or non-severe." *Robert E. v. Comm'r of Soc. Sec.*, No. 20-6882, 2021 WL 5277193, at *6 (D.N.J. Nov. 12, 2021); 20 C.F.R. § 404.1520(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "It is well established that any omission of an impairment at [s]tep [t]wo is harmless error, provided that the ALJ determines that the claimant has at least one severe impairment and continues onto the subsequent steps of the sequential analysis." *Vanessa T-H. v. Comm'r of Soc. Sec.*, No. 23-2293, 2024 WL 1635685, at *4 (D.N.J. Apr. 16, 2024) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007)).

Here, the ALJ found in Plaintiff's favor at step two in finding that Plaintiff had multiple severe impairments. Therefore, any omission of conversion disorder at step two is harmless error

9

and is not a basis for reversal or remand. *See, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 n.2 (3d Cir. 2006) ("[The plaintiff] also argues that the ALJ committed errors in the second step, but the ALJ found in her favor at that step (holding that she did have a severe impairment), so any such errors were harmless."); *Salles*, 229 F. App'x at 145 n.2 ("Because the ALJ found in [plaintiff's] favor at [s]tep [t]wo, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless." (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005))); *see also Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it has considered all of the [plaintiff's] impairments, whether severe or not, in combination.").

### 2.   *Conversion Disorder at Step Three*

Plaintiff next argues that the ALJ was "nevertheless required to consider [the conversion disorder's] impact, in combination with the impact of Plaintiff's other impairments . . . throughout the disability determination process" and "the ALJ's failure to evaluate the case for somatic disorders [which includes the conversion disorder] at [s]tep [three] . . . was reversible error because it affected the outcome." (Pl.'s Moving Br. 22-23.) Specifically, Plaintiff argues that the ALJ erred by not directly citing Listing 12.07 in her evaluation of whether Plaintiff met or medically equalled any listings at step three "despite discussing multiple other categories of mental impairment which are less significant in this case[.]" (*Id.*)

The ALJ's opinion must be "read as a whole" to understand the factors considered in the decision, including those at step three. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). At step three, ALJs typically must provide "some discussion" of their determination, although they "need not 'use particular language or adhere to a particular format in conducting [their] analysis,' as long

as 'there is sufficient development of the record and explanation of findings to permit meaningful review[.]'" *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 813-14 (3d Cir. 2016) (citing *Jones*, 364 F.3d at 505). And should the Court find the ALJ's step-three analysis deficient as to certain impairments, the plaintiff must provide reasons as to why she "might have prevailed at step three if the ALJ's analysis had been more thorough." *Id.* at 814.

As a preliminary matter, beyond a conclusory assertion that the ALJ's purported failure to analyze somatic disorders at step three was reversible error because it "affected the outcome" (*see* Pl.'s Moving Br. 22-23), Plaintiff provides no reasoning as to why she would have prevailed if the ALJ had considered such disorders at this step. *See Holloman*, 639 F. App'x at 814 ("Whether or not the ALJ's analysis of these impairments was sufficiently thorough, [plaintiff] offers no explanation of how further analysis could have affected the outcome of his disability claim. Even if [the court] found a portion of the ALJ's step-three analysis to be deficient, [the court] would have no reason to conclude that the deficiency in analysis was harmful to [plaintiff's] claim.").

Furthermore, the ALJ relied on substantial evidence in determining that "[t]he severity of the claimant's mental [and related physical] impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.02, 12.04, 12.06, and 12.15." (AR 21.) Specifically, the ALJ noted that "[i]n making [her] finding, [she] considered whether the 'paragraph B' criteria were satisfied" and ultimately determined that Plaintiff "has moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself." (*Id.*) To come to her conclusion, the ALJ specified that she reviewed certain medical records, including a February 2015 mental status examination (noted as exhibit 49F) and a 2017 psychiatric consultative examination (noted as exhibit 66F), both of which *explicitly mention* conversion

disorder. (*See, e.g., id.* at 1993, 1995, 2430, 2432, 2454.) Where, as here, the "ALJ explicitly considered Plaintiff's impairments 'singly and in combination,'. . . there is 'no reason not to believe' that the ALJ did so." *Ward v. O'Malley*, No. 18-13675, 2024 WL 1048078, at *6 (D.N.J. Mar. 11, 2024) (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008)).

The Court finds, therefore, that the ALJ's finding that Plaintiff's combination of impairments did not meet or medically equal the severity of the listed impairments was supported by substantial evidence. The Court, accordingly, finds this argument an insufficient basis for reversal or remand.

### B.    Plaintiff's Remaining Arguments

Plaintiff's remaining arguments relate to various aspects of Plaintiff's overarching contention that the ALJ's findings were not supported by substantial evidence. (*See* Pl.'s Moving Br. 19-20, 23-29.) For the reasons discussed below, the Court disagrees.

Plaintiff first argues that the ALJ made a "patent mistake of fact" in finding that "Dr. Greco's pre-DLI findings were all normal" and finding "there was 'no evidence of . . . decreased sensation or deep tendon reflexes[.]'" (Pl.'s Moving Br. 20.) After appropriate consideration of the extensive medical record before her, the ALJ noted in her analysis that Plaintiff's "neuropsychological and psychological findings fell within normal limits" and that Plaintiff's "psychological functioning was overall unremarkable." (AR 24-25.) This conclusion is supported by substantial evidence, including the ALJ's review and citation to Dr. Greco's June 2012 examination notes which indicated that "[i]ntegrating [Plaintiff's] neuropsychological and psychological findings revealed at this point in time a cognitive profile that fell within normal limits. In fact, her scores fell within the average to above average range." (*Id.* at 1127, 2722.) The

ALJ also considered the single reference included in Plaintiff's April 30, 2012 neurological examination that Plaintiff's "[d]eep tending reflexes was 1+, 2+ and there was diminution of sensation on the right side." (*Id.* at 24.) Plaintiff's argument that the ALJ's failure to consider the evidence of "decreased sensation or deep tendon reflexes" is not supported by any citations to the record, is directly contradicted by the ALJ's analysis, and must, therefore, be rejected. (*See* Pl.'s Moving Br. 20.)

Plaintiff next argues that the ALJ did not properly evaluate Plaintiff's ADEM condition or its impact in its analysis, and merely "checked the box" for ADEM. (*Id.* at 23-25.) The ALJ's conclusion that Plaintiff's RFC is "categorized as less than the full range of sedentary work," explicit mention of Plaintiff's ADEM, and accounting for Plaintiff's need for one emergency visit per month for her ADEM all undermines this argument. (*See* AR 29.) In fact, the ALJ considered Plaintiff's medical records and explicitly noted that Plaintiff was diagnosed with ADEM after a June 2011 hospital stay and that Plaintiff "carries a diagnosis of [ADEM] with multiple emergency department visits and inpatient stays." (*Id.* at 24, 29.) In reviewing Plaintiff's subsequent medical documentation, including an August 2018 medical report that Plaintiff was having panic attacks and examination notes from a July 2019 emergency department visit, the ALJ ultimately concluded that "[Plaintiff's] condition appears to have stabilized as the subsequent office visits reflect limited

follow up in 2018 and 2019." (*Id.* at 27-29.) Such a conclusion is directly supported by Plaintiff's medical records, and thus, the ALJ's decision is supported by substantial evidence.[3] (*See id.*)

Plaintiff next argues that the ALJ failed to consider the "combined effects of impairments, side effects of medications, and aggravating factors" such as "Plaintiff's headaches or sequelae of ADEM, [and] the [fact that] Plaintiff cannot tolerate noise, which triggers and aggravates them." (Pl.'s Moving Br. 25-26.) Plaintiff argues that if the ALJ had "acknowledged that Plaintiff needs a 'quiet' environment and would not be able to tolerate a [forty] hour week in an environment of 'moderate' noise, this additional factor would preclude competitive work[.]" (*Id.*) Plaintiff's own testimony that her "difficulties . . . with respect to sound or . . . volume" were "[l]oud noises[,] [j]ust loud noises," undercuts this argument. (*See* AR 112.) The Court must take the ALJ at her word that she considered the entire record in coming to her conclusion. (*See* AR 29 ("Thus, after considering the entire record . . .")); *see also Jones v. Comm'r of Soc. Sec.*, 297 F. App'x 117, 120 (3d Cir. 2008) ("[W]e take the ALJ at [her] word[.]"). The ALJ's decision, is therefore, supported by substantial evidence in the record.[4]

---

[3] Plaintiff's argument that the ALJ erred in not seeking additional medical expert testimony, (*see* Pl.'s Moving Br. 24), also fails. The ALJ's decision not to seek additional medical expert testimony is entirely within the ALJ's discretion. *See Carin F. v. O'Malley*, No. 22-4193, 2024 WL 3949322, at *14 (D.N.J. Aug. 27, 2024) ("[A]n ALJ is vested with broad discretion in determining whether to consult with a medical expert." (citing *Hardee v. Comm'r of Soc. Sec.*, 188 F. App'x 127, 129 (3d Cir. 2006))). The ALJ, accordingly, did not err in her determinations regarding ADEM or her decision not to seek additional testimony outside of the record for ADEM. *See, e.g., Miguel v. Comm'r of Soc. Sec.*, 129 F. App'x 678, 680 (3d Cir. 2005) ("The regulations do not require that a medical expert testify at the claimant's hearing." (citing 20 C.F.R. § 404.1529(b))).

[4] Plaintiff also argues that it is "not either-or, it's both and all" in arguing again that the ALJ did not consider Plaintiff's combined impairments. (*See* Pl.'s Moving Br. 27-28.) For the reasons discussed above, this argument once again fails as the Court finds the ALJ's decision supported by substantial evidence.

Plaintiff subsequently argues that the ALJ failed to properly evaluate the evidence from Dr. Greco because she "discounted Dr. Greco's post-DLI report because it was written post-DLI" and "[t]he ALJ did not discuss Dr. Greco's voluminous records[.]" (Pl.'s Moving Br. 26-27.) In addition to broadly considering Dr. Greco's reports, the ALJ explicitly discussed Dr. Greco's post-DLI report, noting that she found it "not persuasive as [Dr. Greco] did not identify when the opined limitations applied as the opinion [was] rendered years after the DLI." (AR 28); *see also Porter v. Comm'r of Soc. Sec.*, No. 18-3744, 2019 WL 2590994, at *4 (D.N.J. June 25, 2019) (noting ALJ did not err in giving medical expert's "opinion little weight because it 'was rendered more than a year after [Plaintiff's] date last insured and [it] does not indicate that it relates back' to the disability evaluation period" (alterations in original)). The ALJ also need not refer explicitly to every detail of medical evidence. *See Fargnoli*, 247 F.3d at 42 (noting that the ALJ need not "make reference to every relevant treatment note in a case where the claimant . . . has voluminous records"). The ALJ here properly "consider[ed] and evaluate[d] the medical evidence [of Dr. Greco] in the record consistent with [her] responsibilities under the regulations and case law." *Id.* The Court, therefore, rejects Plaintiff's argument.

Lastly, Plaintiff argues that "had the ALJ properly evaluated the evidence, [Plaintiff] would have been found disabled." (Pl.'s Moving Br. 28-29.) Plaintiff fails to identify what evidence the ALJ failed to properly evaluate and instead seemingly takes general issue with the ALJ's RFC determination. "A claimant's RFC reflects 'what [the claimant] can still do despite [his or her] limitations.'" *Morris v. Comm'r Soc. Sec.*, No. 19-13744, 2020 WL 2764803, at *4 (D.N.J. May 28, 2020) (alterations in original) (citing 20 C.F.R. § 416.945(a)). "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184, at

*2 (S.S.A. July 2, 1996). Where "evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court finds that the ALJ's findings, including but not limited to her RFC determination, are supported by substantial evidence for the reasons discussed above and accepts the ALJ's conclusions.[5] The Court, accordingly, affirms the ALJ's decision.

IV.   **CONCLUSION**

For the foregoing reasons, the Court affirms the Commissioner's final decision. The Court will issue an order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: December 22nd, 2025

---

[5] The Court also notes that Plaintiff argues that "straw men and red herrings do not constitute substantial evidence," providing little-to-no support for this argument. (*See* Pl.'s Moving Br. 27.) Because Plaintiff does not identify any evidence or even identify what she is referring to, the Court deems this argument waived. *See Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) (finding "undeveloped argument has been waived" (citing *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005))).